IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

MILTON TAYLOR,                      :
                                    :
            Petitioner,             :
                                    :
      v.                            :    Civil Action No. 11-1251-CFC
                                    :
ROBERT MAY, Warden, and             :
ATTORNEY GENERAL OF THE             :
STATE OF DELAWARE,                  :
                                    :
            Respondents.            :

---

## **MEMORANDUM OPINION**

Tiffani D. Hurst, Esquire, Philadelphia, Pennsylvania.  Counsel for Petitioner.

Kathryn Joy Garrison, Deputy Attorney General, Delaware Department of Justice, Wilmington, Delaware.  Counsel for Respondents.

March 29, 2023
Wilmington, Delaware

CONNOLLY, CHIEF JUDGE:

Pending before the Court is Petitioner Milton Taylor's ("Petitioner") Motion to Alter or Amend Judgment Pursuant to Fed. R. Civ. P. 59  ("Rule 59 Motion"), asking the Court to reconsider its denial of his federal habeas Petition and alter or amend its judgment.  (D.I. 93)  For the reasons discussed, the Court will deny the Rule 59 Motion.

## I.    BACKGROUND

The Court set forth the factual and procedural history of this case in its Memorandum Opinion (D.I. 91 at 2-6) and will not repeat it here in full.  Nevertheless, the Court will provide a summary where relevant to the instant Rule 59(e) Motion.

The underlying Petition asserted the following four Claims: (1) trial counsel provided ineffective assistance ("IATC") by failing to (a) present a defense of extreme emotional distress ("EED"); (b) retain a forensic pathologist; (c) object to evidence of the victim's pregnancy; (d) adequately litigate the motion to suppress Petitioner's confession note; (e) object that the death qualification process utilized in his case created a jury that was biased and violated his right to a fair and impartial jury; and (f) object when the State engaged in prosecutorial misconduct; (2) appellate and post-conviction counsel provided ineffective assistance; (3) the cumulative effect of each alleged error deprived Petitioner of a fair trial; and (4) the Delaware Supreme Court violated several constitutional rights of Petitioner by failing to resentence him pursuant to 11 Del. Code § 4205 instead of § 4209, and his sentence to life without parole under § 4209 violates the Eighth and Fourteenth Amendments.

After determining that the Delaware Supreme Court adjudicated Claim One (A) and Claim Four on the merits, the Court denied the Claims for failing to satisfy the deferential standard articulated in § 2254(d).  The Court denied the remaining Claims in the Petition – Claims One (B)-(F), Two, and Three – as procedurally barred after determining that "the 2014 version of [Delaware Superior Court Criminal] Rule 61, as applied to Petitioner's case, constitutes an adequate state procedural rule."  (D.I. 91 at 44)

## II.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 59(e) is "a device [] used to allege legal error,"[1] and may only be used to correct manifest errors of  law or fact or to present newly discovered evidence.  *See Howard Hess Dental Labs, Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010).  The scope of a Rule 59(e) motion is extremely limited. *See Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. Dec. 22, 2011); *see also Brambles USA Inc. v. Blocker*, 735 F. Supp. 1239, 1240 (D. Del. 1990).  The moving party must show one of the following in order to prevail on a Rule 59(e) motion: (1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice.  *See Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).  Although the Third Circuit has "never adopted strict or precise definitions for 'clear error of law or fact' and 'manifest injustice' in the context of a motion for reconsideration," at a minimum, a manifest error or injustice is a "direct,

---

[1]*United States v. Fiorelli*, 337 F.3d 282, 288 (3d Cir. 2003).

2

obvious, or observable error [...] that is of at least some importance to the larger proceedings." *In re Energy Future Holdings Corp.*, 904 F.3d 298, 312 (3d Cir 2018). More specifically, when determining whether a decision resulted in a manifest injustice, a court must focus "on the gravity and overtness of the error." *Id.* at 312. Finally, a "motion for reconsideration is not to be used as a means to reargue a case or to ask a court to rethink a decision it has made." *United States v. Kennedy*, 2008 WL 4415654, at *1 (W.D. Pa. Sept. 26, 2008).

## III.   DISCUSSION

In his timely filed Rule 59(e) Motion, Petitioner asserts that the Court committed the following errors when denying his Petition: (1) the Court erred in concluding that Rule 61 (2014) was adequate as applied to him (D.I. 93 at 2-5) and, therefore, erred in denying defaulted Claims One (B)-(F), Two, and Three as procedurally barred; (2) the "Court incorrectly relied upon the "miscarriage of justice" standard as part of its *Martinez* analysis" when determining if Petitioner demonstrated cause for his default of Claims One (B)-(F), Two, and Three (D.I. 93 at 6); (3) the "Court [i]ncorrectly found that [Petitioner] presented Claim One (A) (IATC with respect to EED defense) [...] to the Delaware Supreme Court on appeal of the Superior Court's denial of his first Rule 61 motion and, as a result, incorrectly applied § 2254(d) rather than *Martinez*" (D.I. 93 at 6); and (4) the "Court incorrectly failed to grant an evidentiary hearing prior to considering prejudice and failed to find Initial Post-Conviction Counsel ineffective" (D.I. 93 at 7). Petitioner also asserts that the Court should grant a certificate of appealability for each

Claim, because "each of the[] claims are debatable, even if the Court finds that every jurist would agree that the claims should be denied." (D.I. 93 at 10)

### A. Court's Holding That Rule 61 (2014) Was Adequate As Applied to Petitioner

Petitioner contends that the Court should reconsider its decision that the post-2014 version of Rule 61 constituted an adequate state procedural rule as to Petitioner's Claims One (B) – (F), Two, and Three because it "misinterpreted *Campbell v. Burris*, 515 F.3d 172 (3d Cir. 2008), and misapplied *Cabrero v. Barbo*, 175 F.3d 307, 313 (3d Cir. 1999) while ignoring *Bronshtein v. Horn*, 404 F.3d 700 (3d Cir. 2005)." (D.I. 93 at 3) This argument is unavailing. First, the Court did not ignore *Bronshtein*; in fact, the Court applied *Bronshtein*'s three-step test for determining the adequacy of a state procedural rule. (*See* D.I. 91 at 38-48) Second, the issue of adequacy in this case presents the following question of first impression: whether a firmly established state procedural rule barring second or successive Rule 61 motions no longer qualifies as an adequate and independent state procedural bar due to a legislature's change in the standard of proof necessary to trigger an *exception* to the bar, without changing the substance of the bar itself. The fact that the Court relied on general principles of law articulated in *Campbell* and *Cabrero* for guidance on how to approach this novel issue of adequacy, and reached a conclusion opposite to the one desired by Petitioner, does not constitute a misinterpretation or misapplication of those decisions.

As the Court explained in its Memorandum Opinion:

> When Petitioner filed his first Rule 61 motion in 2006, he had notice under Rule 61(i)(2) that obtaining review for successive claims not included in an initial Rule 61 motion would require

4

the exercise of a defined amount of judicial discretion to determine if he fit within one of the statutory exceptions to the bar. When Petitioner filed his second Rule 61 motion in 2017, he had notice under Rule 61(i)(2) that obtaining review for successive claims not included in an initial Rule 61 motion would require the exercise of a defined amount of judicial discretion to determine if he could satisfy the statutory exceptions to the bar. Although the defined amount of judicial discretion to be exercised when determining if the exceptions are satisfied changed from 2006 to 2014, at all times Petitioner knew – *i.e.*, had fair notice – that the failure to include all claims in his first Rule 61 motion would result in a default. Viewed in this manner, it is evident that Petitioner had fair notice in 2006 that he should include all claims in his first Rule 61 motion or risk having subsequent motions be barred as successive.

(D.I. 91 at 43-44)  Importantly, this is not a case where "discretion has been exercised to impose novel and unforeseeable *requirements* [in a state procedural bar] without fair or substantial support in prior state law." *Walker v. Martin*, 562 U.S. 307, 320 (2011) (emphasis added).  Instead, at the time of his original default, Petitioner had fair notice of Rule 61's well-established and foreseeable requirement that a petitioner must include all grounds in an initial Rule 61 motion or risk losing the opportunity to pursue those grounds.

Accordingly, Petitioner's instant argument concerning *Campbell*, *Cabrero*, and *Bronshtein* fails to warrant reconsideration of the Court's ruling that Rule 61 (2014) was adequate as applied to him.

## B. Court's Application Of *Martinez*'s Second Requirement

Next, Petitioner argues that the "Court applied the wrong standard in addressing the second part of *Martinez*" because it considered whether Petitioner had demonstrated a miscarriage of justice instead of considering whether the underlying

IATC claim had "some merit."  (D.I. 93 at 6)  Petitioner has misconstrued the Court's reference to the "miscarriage of justice exception" as being part of its inquiry into whether Petitioner demonstrated cause under *Martinez*.  Instead, the Court's reference to the "miscarriage of justice exception" was a reference to the next step in its procedural default analysis.[2]

Accordingly, Petitioner's mistaken understanding of the Court's reference does not warrant reconsideration of its denial of the procedurally defaulted IATC Claims.

### C. Court's Conclusion That Claim One (A) Should Be Reviewed Under § 2254(d)'s Deferential Standard

In his initial Rule 61 proceeding, Petitioner argued that trial counsel provided ineffective assistance during the guilt and penalty phases of his trial "by failing to investigate, prepare and present evidence supporting" an "extreme emotional distress" defense. *State v. Taylor*, 2010 WL 3511272, at *34 (Del. Super. Ct. Aug. 6, 2010). The Superior Court and the Delaware Supreme Court denied the ineffective assistance of trial counsel argument as meritless.

In Claim One (A) of his federal habeas Petition, Petitioner argued that "prior counsel rendered constitutionally ineffective assistance by failing to investigate and present available evidence establishing that [Petitioner] was under extreme emotional distress (EED) at the time of Ms. Williams's death." (D.I. 67 at 28)  Petitioner described new evidence revealed in declarations from individuals who knew Petitioner as a child

---

[2]When a claim is procedurally defaulted, federal habeas review is barred unless the petitioner demonstrates "cause and prejudice" or a miscarriage of justice.

(evidence which trial counsel had failed to discover and present during Petitioner's trial as support for an EED defense) (D.I. 67 at 30-53) – and argued:

> Although this claim was raised in part during [Petitioner's] initial post-conviction proceedings, the factual premise upon which the Delaware Supreme Court relied in denying this claim was incorrect.  The Delaware Supreme Court found that Dr. Dougherty and Dr. Mack had "based their opinions on uncorroborated statements" [Petitioner] made to them.  […] The denial of the part of this claim presented to the Supreme Court of Delaware was contrary to and an unreasonable application of clearly established federal law.
>
> To the extent that prior counsel failed to raise the entirety of this claim, this ineffectiveness prejudiced [Petitioner], and but for this ineffectiveness, the results of the proceedings would have been different.  In the alternative, the error was prejudicial and had a substantial and injurious effect on the verdict.  Initial post-conviction counsel was ineffective to the extent they failed to raise parts of this claim.  Any procedural default resulting from this failure can be overcome under *Martinez*.

(D.I. 67 at 54- 55)

Petitioner's Traverse articulated the reason for his procedural default reference in more depth:

> The *Martinez* opinion applies to cases, like [Petitioner's], where initial post-conviction counsel raised some ineffective assistance of counsel claims that were adjudicated on the merits in state court, but failed to raise other claims, *Dickens v. Ryan*, 740 F.3d 1302, 1319 (9th Cir. 2014) (en banc), and where subsequent counsel "substantially improved" upon a version of the claim presented to the state court.
>
> This Court must consider the entirety of Claim One (A) under *Martinez v. Ryan* because [Petitioner] substantially improved it in a  way [that] renders it new under *Dickens*, and procedurally excused under *Martinez*.

*          *          *

[Petitioner's] current Extreme Emotional Distress claim bears little resemblance to the claim that was before the state court during initial post-conviction proceedings. *See Dickens*. Respondents argue that this is [Petitioner's] fault because he would not let trial counsel and initial post-conviction counsel present this evidence. However, in capital cases, prior counsel is required to conduct an adequate investigation regardless of what client wants.

\*              \*              \*

Prior counsel also has a duty to present expert testimony to explain the client's history of psychiatric illness, organic brain dysfunction, child abuse, and psycho-social life disorders that are essential to developing an accurate profile of defendant's mental health. While prior counsel did this here, they failed to present adequate expert testimony because they did not provide their experts with the overwhelming majority of [Petitioner's] tumultuous history.

\*              \*              \*

Prior counsel's investigation fell below objective standards of reasonableness. [...] The evidence presented in Claim One (A) of [Petitioner's] petition supports that [Petitioner] was prejudiced by prior counsel's deficient performance. [Petitioner] presents this Court with multiple exhibits which corroborate [Petitioner's] traumatic childhood. [...] Thus, the jury did not hear the cause for [Petitioner's] extreme emotional distress – the physical and emotional abuse and abandonment that [Petitioner] suffered in his childhood, which exponentially compounded his perception of the impact of his paramour's abandonment.

Had prior counsel presented this evidence through the testimony of qualified experts, the jury would have learned that his traumatic childhood shaped his brain and his subsequent capacity for regulating his emotions and behaviors.

(D.I. 85 at 8 -13)

8

In essence, Petitioner asserted that his IATC argument in Claim One (A) had been adjudicated on an inadequate record during his initial Rule 61 proceeding as a result of post-conviction counsel's ineffective assistance. Relying on the premise that Claim One (A)'s "substantially improved" IATC argument was not fully exhausted and not adjudicated on the merits by the Delaware courts, Petitioner contended that he should "be given the opportunity to demonstrate whether he can demonstrate cause under *Martinez* to overcome the procedural bar." (D.I. 85 at 8)  While not entirely clear, Petitioner appears to believe that the resulting *Martinez* inquiry would have permitted the Court to consider the new evidence.  Petitioner relied on the Ninth Circuit's decision in *Dickens*[3] to support this argument.

The Court denied Claim One (A) for failing to satisfy the standards articulated in § 2254(d) without explicitly addressing Petitioner's *Dickens* argument that the Claim

---

[3]In *Dickens*, post-conviction counsel presented an ineffective assistance of sentencing claim to the state courts that did not assert specific facts or provide evidentiary support.  *See Dickens*, 740 F.3d at 1317-19.  The state courts denied the claim, and Dickens filed a federal habeas petition which amended the claim to include extensive new factual allegations and mitigation evidence. *See id.* at 1317.  The district court determined that the claim was procedurally defaulted because Dickens' new allegations and evidence fundamentally altered his previously exhausted ineffective assistance of sentencing counsel claim.  *Id.*  Citing *Vasquez v. Hillery*, 474 U.S. 254, 260 (1986), the Ninth Circuit agreed that the new ineffective assistance of sentencing counsel claim was unexhausted, explaining that "[a] claim has not been fairly presented in state court if new factual allegations either fundamentally alter the legal claim already considered by the state courts, or place the case in a significantly different and stronger evidentiary posture than it was when the state courts considered it." *Dickens,* 740 F.3d at 1318. The Ninth Circuit concluded that Dickens' newly enhanced *Strickland* claim was procedurally barred, and remanded the case to the district court for consideration of whether Dickens' ineffective assistance of post-conviction counsel claim was sufficient to overcome the procedural default of the newly enhanced ineffective assistance of sentencing counsel claim under *Martinez*. *Id.* at 1319.

was so "fundamentally altered" from his original ineffective assistance of counsel claim in his first Rule 61 proceeding that the Court should treat it as unexhausted and procedurally defaulted.[4]  Petitioner's Rule 59 Motion re-asserts his *Dickens/* "fundamental alteration" argument, and contends that the Court erred by not treating Claim One (A) as procedurally defaulted.

While Petitioner's instant *Dickens* argument does not persuade the Court that its denial of Claim One (A) was based on any error that warrants Rule 59 (e) relief, the Court finds it beneficial to clarify its reasoning for implicitly rejecting Petitioner's *Dickens* argument.  *See Banister v. Davis*, 140 S.Ct. 1698, 1708 (2020) ("Even when [Rule 59(e) motions] do not [change judicial outcomes], they give habeas courts the chance to clarify their reasoning or address arguments (often made in less-than-limpid *pro se* petitions) passed over or misunderstood before.").  Unlike in *Dickens*, the new evidence (*i.e.*, the declarations) Petitioner provided in this proceeding does not place Claim One (A) in a "significantly different and substantially improved evidentiary posture" than the IATC argument presented in his initial Rule 61 proceeding.  The following background information provides context for both Petitioner's argument and the Court's conclusion.

In his first Rule 61 proceeding, Petitioner argued that "trial defense counsel should have interviewed other members of his family and associates, obtained additional medical records, and reviewed certain court records in order to present both

---

[4]While the Court did not explicitly address Petitioner's *Dickens* argument when denying Claim One (A), the Court implicitly rejected the argument by denying the Claim under under § 2254(d).

an EED defense and an adequate mitigation case." *Taylor v. State*, 32 A.3d 374, 382 (Del. 2011); *see Taylor*, 2010 WL 3511272, at *16. To support this argument, initial post-conviction counsel called the following witnesses to testify during the fourteen days of Rule 61 evidentiary hearings: trial counsel; Jesse Hambright, a Department of Correction guard who had regular contact with Taylor from 2000 to 2001; Judith Mellen, former executive director of the ACLU, who investigated overcrowding and harsh punishments at Ferris School in 1989 (Petitioner was in Ferris until 1986); Robert Golebiewski, a presentence officer who testified at Petitioner's penalty hearing; John Scholato, Jr., Petitioner's teacher at Ferris School and Gander Hill Prison; David Ruhnke, Esquire, who had tried fourteen capital cases in Maryland and had reviewed Petitioner's file and written a report regarding his opinions; Regina Devlin, paramour;; Brother David; and Drs. Edward Dougherty and Jonathan H. Mack, postconviction psychologists. *See Taylor*, 2010 WL 3511272, at *11. The testimony provided by the two expert witnesses – Drs. Dougherty and Mack – are most relevant to the instant issue.

Dr. Dougherty testified that Petitioner was abused by his parents, and that he was under extreme emotional distress at the time of Ms. Williams' death. *See id.* at *12. Dr. Mack testified that Petitioner suffered from brain damage that was "most likely" caused by "serial concussions." (D.I. 59-17 at 123) Dr. Mack described how Petitioner told him that he (Petitioner) was beaten repeatedly by his stepfather during his childhood, that he was hit in the head during numerous fights while growing up, and that

11

he was hit in the head while playing football.  (*Id*.)  Dr. Mack then explained that brain

damage could be a contributing factor to extreme emotional distress.  (*Id*. at 127-130)

When denying Petitioner's original IATC argument in his initial Rule 61

proceeding, the Superior Court opined:

> With their competent experts' help and through consultation with their client, trial counsel considered and explored different potential avenues of action, including extreme emotional distress and guilty but mentally ill.  [Petitioner's] claims that those things were not considered is simply not true. […]
>
> Unfortunately for them and for [Petitioner], trial counsel were stymied at every turn. [Petitioner's] arguments to the contrary notwithstanding, the record shows that the original mental health professionals considered a wide range of possible diagnoses that potentially would have helped at trial and in mitigation. With the exception of testing for organic brain damage, discussed above, none of the original experts was seriously concerned about the missing background information that [Petitioner] now insists was vital.
>
> As presented above, the primary diagnosis offered by the only psychiatrist who testified at the postconviction evidentiary hearing was "severe" antisocial personality disorder.  She also noted substance abuse.  All of the mental health professionals agree about that.
>
> [Petitioner] told everyone that he was seriously abused as a child, but the psychiatrist testified that as to people with antisocial personality disorder, "[t]here is a marked tendency not to be truthful."  The pastoral counselor similarly opined that "it was difficult to determine if [Petitioner] was reporting information reliably."  Against that background, there is reason to believe that one of the new defense team's core claims—unexplored childhood abuse—is also dramatically exaggerated.
>
> No one, including [Petitioner], has ever testified firsthand that [Petitioner] was abused.  To the contrary, [Petitioner's] parents, who are clergy, deny it.  Furthermore, [Petitioner] told

12

the doctors that he did not see what he accused his stepfather of as "abuse[.] ... [H]e said that his father was trying to teach him right from wrong. He was trying to set him straight." The social worker who actually investigated the worst claim of abuse did not substantiate it, much less the pattern of abuse on which [Petitioner] now relies. Besides, [Petitioner] insisted that trial counsel not present mitigators based on abuse.

Similarly, as presented above, [Petitioner's] claims of serious head trauma are largely uncorroborated by medical records. There are two incidents, neither of which is shown to have even caused loss of consciousness. Thus, it is far from clear that trial counsel could have carried off the one-sided presentation [Petitioner] made at the postconviction relief hearing.

As also presented at the outset above, the psychiatrist further learned that [Petitioner] enjoyed torturing and killing small animals with a bat or with fire. He set a schoolgirl's hair on fire. Had the psychiatrist been called at trial, on cross-examination she would have agreed that, based on her diagnosis, it could be said that [Petitioner] "was born to be hanged." As set out above, [Petitioner's] viciousness was shocking, even to an experienced psychiatrist. In any event, the psychiatrist told trial counsel not to call her as a witness, and the court was not aware of those terrible things when it sentenced [Petitioner].

The court is satisfied that trial counsel's retaining Dr. Tavani helps establish trial counsel's effectiveness, and trial counsel cannot be blamed because the psychiatrist concluded that [Petitioner] is a vicious criminal. Nor can trial counsel be held responsible because the other experts did not do better for [Petitioner].

Although they could not gin up an extreme emotional distress defense for [Petitioner] like his new experts did, trial counsel seriously considered it and they testified emphatically that they tried hard to "tease" one out of [Petitioner]. They also considered "guilty but mentally ill," addiction, and other potential avenues.

As another avenue, trial counsel turned to [Petitioner's] family, but that, too, was largely a dead end. Then came [Petitioner], himself, and his unreasonable demands that the defense

13

> pursue a phony actual innocence defense, and no mitigation case. Even if trial counsel performed more investigation than they did, the evidence would not have fit within the confines provided by [Petitioner] for presentable mitigation evidence.
>
> The court acknowledges the argument that if trial counsel had ferreted out more information, they might have changed [Petitioner's] mind and he would have agreed to a broader mitigation case. [Petitioner], however, even now, has not claimed that if he knew then what his new defense team has come up with, he would have changed his attitude toward the mitigation case presented at the penalty hearing. The claim that trial counsel could have changed [Petitioner's] mind is entirely theoretical.

*Taylor*, 2010 WL 3511272, at *18–19.  Importantly, the Superior Court concluded:

> Petitioner's second round of experts offer only a little more than the originals. Mostly, if Drs. Dougherty and Mack were allowed by [Petitioner] to testify to a jury, they would better explain how [Petitioner] became so dangerous. They would not, however, blunt the terrible truth that after a life of crime, [Petitioner] got high and strangled a defenseless, pregnant woman in her home while her children, including one by [Petitioner], played outside.

*Id.* at *21.   The Superior Court rejected Petitioner's argument that trial counsel had been ineffective by failing to investigate and present an EED defense, stating that the "hypothetical extreme emotional distress defense" presented by Petitioner's new experts (Drs. Mack and Dougherty) was "far-fetched."  *Taylor*, 2010 WL 3511272, at *25.  When affirming the Superior Court's denial of Petitioner's original IATC claim, the Delaware Supreme Court stated that Petitioner's "new postconviction defense experts, Drs. Dougherty and Mack, based their opinions on uncorroborated statements [Petitioner] made to them." *Taylor*, 32 A.3d at 384.

14

In Claim One (A), Petitioner focused on the Delaware Supreme Court's statement concerning "uncorroborated statements" and argued that the evidence revealed by the declarations presented in this proceeding would have corroborated Petitioner's "history of abuse and neglect, which laid the foundation for Dr. Dougherty and Dr. Mack's conclusions." (D.I. 67 at 54)  While the Court agrees that the declarations provide additional evidentiary support for Petitioner's allegations of abuse and reveal the abuse as a potential cause for his brain damage which, in turn, may have been a contributing factor of his EED, this "new evidence" does not change – or fundamentally alter – the legal basis of Petitioner's original IATC argument that the Delaware courts considered and rejected when denying his first Rule 61 motion.  As explained below, Petitioner has not demonstrated the existence of a connection between the alleged physical abuse and Petitioner's alleged EED, nor has he demonstrated that presenting the new evidence of abuse evidence would have altered the state court's consideration of the experts' testimony.

For instance, during the evidentiary hearings, Dr. Mack testified that Petitioner suffered from mild brain damage, which he opined was one of the factors contributing to Petitioner's emotional distress. (D.I. 59-17 at 130-153)  Dr. Mack was extensively questioned by the State, post-conviction counsel, and the Superior Court about the potential causes of that brain damage – damage that existed from birth, damage caused by drug and alcohol use, or damage caused by physical injuries – and he opined that the brain damage was most likely due to a combination of all these factors.  (*Id.*)  When initial post-conviction counsel asked Dr. Mack if he could have reached his conclusions

concerning Petitioner's brain damage in 2000-2001 "without ever referring to a history of child abuse," Dr. Mack responded "yes."  (D.I. 59-17 at 130)

Notably, when considering the import of Dr. Mack's testimony, the Superior Court opined:

> The court has no reason to question the opinion of Dr. Mack that was solidly based on objective testing. Basically, that means the court accepts Dr. Mack's opinion that [Petitioner] has mild brain damage, perhaps from birth. **The open question concerns the implications of Dr. Mack's objective findings.**
>
> Much of Dr. Mack's specific testimony about the mild brain damage described problems with memory, language, manual dexterity and concept formation. It is unclear, however, the extent to which the mild brain damage accounts for [Petitioner's] antisocial personality. **And, it is even less clear the extent, if any, that the brain damage helps account for [Petitioner] murdering Williams, or anything relating to this case.**

*Taylor*, 2010 WL 3511272, at *14 (emphasis added).  Although the Superior Court also noted that "Dr. Mack's opinions that are based on things that [Petitioner] said are unreliable [such as his self-reported head injuries]," *id.*, Petitioner has failed to explain how the addition of the declarations describing physical abuse that may have been at least one cause of Petitioner's brain damage would have provided the Superior Court's "missing piece" linking the brain damage and Petitioner's extreme emotional distress.

Perhaps even more detrimental to Petitioner's instant argument is the fact that the state courts actually did consider the expert testimony concerning Petitioner's past abuse and potential EED.  For instance, when denying Petitioner's original IATC argument in his initial Rule 61 proceeding, the Superior Court observed that all of the

16

defense experts took Petitioner's statements of physical abuse over the word of his parents, who denied any history of physically abusing him. *See Taylor*, 2010 WL 3511272, at *6-7. And, when affirming the Superior Court's decision, the Delaware Supreme Court indicated it would have reached the same conclusion even if the opinions of Drs. Dougherty and Mack had been fully considered. *See Taylor*, 32 A.3d at 384 n. 42 ("Even if we reconstructed the record to include the additional expert opinions [of Drs. Dougherty and Mack], [Petitioner] has not met his burden of showing a reasonable probability of a different sentence.").

In sum, although Petitioner's instant request for reconsideration reveals the benefit of providing further clarification for the Court's implicit rejection of Petitioner's "*Dickens*/fundamental alteration" argument, it does not alter the Court's determination that Petitioner exhausted state remedies for Claim One (A), nor does it alter the Court's conclusion that Claim One (A) does not warrant relief under § 2254(d). Given Petitioner's failure to demonstrate that the dismissal of Claim One (A) was premised on a mistake of law or fact or that it will result in a manifest injustice, the Court will not reconsider its denial of Claim One (A).

### D. Court's Refusal To Grant Evidentiary Hearing Prior To Considering Prejudice Prong

Still relying on *Dickens*, Petitioner contends that the Court erred by concluding that Petitioner failed to demonstrate actual prejudice with respect to (presumably) Petitioner's defaulted IATC Claims (Claims One (B) – (F)) without first holding an

17

evidentiary hearing to determine if Petitioner demonstrated cause and prejudice.[5]  (D.I. 93 at 7-8)  According to Petitioner, "[i]t is likely that the Third Circuit will […] concur with the Ninth Circuit (*i.e.*, *Dickens*) regarding the inapplicability of [§ 2254] (e)(2) to *Martinez* hearing requests." (*Id.* at 7)  As explained below, Petitioner's argument is foreclosed by *Shinn v. Ramirez*, 142 S. Ct. 1718, 1734-35 (2022).

Section § 2254(e)(2) provides:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
>
> > (A) the claim relies on--
> > > (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
> > > (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> >
> > (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

 "Under the opening clause of § 2254(e)(2), a failure to develop the factual basis of a claim is not established unless there is lack of diligence, or some greater fault,

---

[5]In *Dickens*, the Ninth Circuit held that § 2254(e)(2) did not bar a district court from holding an evidentiary hearing on a defaulted IATC claim, because a petitioner seeking to show cause based on the ineffective assistance of post-conviction counsel was "not asserting a 'claim' for relief as that term is used in § 2254(e)(2)." *Dickens*, 740 F.3d at 1321.

attributable to the prisoner or the prisoner's counsel." *Williams v. Taylor*, 529 U.S. 420, 432 (2000); *see also Shinn*, 142 S. Ct. at 1734-35.

Prior to *Shinn*, courts in the Third Circuit did not view § 2254(e)(2) as precluding them from holding evidentiary hearings to evaluate if a petitioner's procedural default of an IATC claim could be excused. *See Williams v. Sup't Mahanoy SCI*, 45 F.4th 713, 722 (3d Cir. 2022); *Cristin v. Brennan*, 281 F.3d 404, 416-17 (3d Cir. 2002). Instead, a district court had discretion to hold an evidentiary hearing to determine if a petitioner could overcome the default of an IATC claim.

That practice changed with *Shinn*. In *Shinn*, the Supreme Court addressed "whether the equitable rule announced in *Martinez* permits a federal court to dispense with § 2254(e)(2)'s narrow limits because a prisoner's state postconviction counsel negligently failed to develop the state-court record." *Shinn*, 142 S.Ct. at 1734. The *Shinn* Court clarified that "postconviction counsel's ineffective assistance in developing the state-court record is attributed to the prisoner." *Id.* at 1734. Consequently, when, as here, a petitioner blames state post-conviction counsel for failing to develop evidence to support a defaulted IATC claim, the federal habeas court cannot hold an evidentiary hearing or otherwise expand the state court record to introduce evidence to support that claim unless the petitioner satisfies one of § 2254(e)(2)'s two narrow exceptions to AEDPA's general bar on evidentiary hearings. *See id.* at 1735; *see also Williams*, 45 F.4th at 724 (AEDPA's prohibition is not limited to formal evidentiary hearings and applies whenever the petitioner wants to expand the record beyond that developed in state court). The *Shinn* Court also held that, because a *Martinez* hearing on cause and

19

prejudice would serve no purpose if the evidence developed there could not be considered on the merits, a federal court may not hold an evidentiary hearing or otherwise consider new evidence to assess cause and prejudice under *Martinez*. *See Shinn*, 142 S.Ct. at 1738-39.

Given *Shinn*'s ruling, Petitioner's continued reliance on *Dickens* is misplaced. Notably, Petitioner does not attempt to meet the standards of § 2254(e)(2), and the Claims for which he seeks an evidentiary hearing do not rely on a new, retroactive rule of constitutional law, nor do they rely on a factual predicate that could not have been discovered previously through due diligence. Therefore, the Court concludes that Petitioner's instant argument does not warrant reconsideration of its refusal to hold an evidentiary hearing on Petitioner's defaulted IATC Claims.

### E. Court's Conclusion That Initial Post-Conviction Counsel Did Not Provide Ineffective Assistance

The Delaware state courts dismissed Claims One (B) – (F) (IATC), Two, and Three as barred under Delaware Superior Court Criminal Rule 61. In an attempt to establish cause for his default of these Claims, Petitioner relied on *Martinez* and argued that post-conviction counsel rendered ineffective assistance during his first Rule 61 proceeding by failing to investigate and pursue grounds for relief beyond claims of ineffective assistance of trial counsel. The Court rejected Petitioner's attempt to establish cause by blaming initial post-conviction counsel for his failure to present the IATC arguments in Claim One (A) – (F) in his initial Rule 61 proceeding because: (1) although two attorneys represented Petitioner during his initial Rule 61 proceeding, Petitioner focused on the personal travails of only one of his attorneys when attempting

20

to satisfy the performance prong of the *Strickland* standard; (2) Petitioner failed to overcome *Strickland*'s strong presumption that counsel's failure to pursue certain issues was the result of a tactical reason; and (3) initial post-conviction counsel presented nine claims, four of which were IATC claims, and also called numerous witnesses to testify during the fourteen days of evidentiary hearing.  (DI. 91 at 47-52)  The Court rejected Petitioner's attempt to establish cause for his default of Claims Two and Three by blaming initial post-conviction counsel because these Claims were not IATC claims.

In his Rule 59 (e) motion, Petitioner appears to assert that the Court erred in denying his ineffective assistance of initial post-conviction counsel argument, stating that he "acknowledges the Court's observation that he had two attorneys represent him during initial post-conviction proceedings," but his "evidence of counsel's deficiency for failing to conduct an adequate investigation applies to both counsel."  (D.I. 93 at 8) Petitioner's "clarification" does not address the Court's other two reasons for rejecting Petitioner's argument that post-conviction counsel were ineffective.  Therefore, Petitioner's instant contention does not warrant reconsideration of the Court's conclusion that post-conviction counsel did not provide ineffective assistance during Petitioner's initial Rule 61 proceeding in the manner he asserted, nor does it warrant reconsideration of the Court's conclusion that Claims One (B)-(F) are procedurally barred from habeas review.[6]

---

[6]The Court does not address Petitioner's argument concerning Claims Two and Three because they are not IATC claims, which means *Martinez* does not provide an available mechanism for establishing cause for Petitioner's default.

### F. Court's Refusal To Grant Certificate Of Appealability

Petitioner asks the Court to reconsider its decision not to issue a certificate of appealability for Claims One (A) – (F), Two, and Three because they are debatable on the merits. (D.I. 93 at 8-10). This argument does not identify manifest errors of law or fact underlying the Court's decision. Therefore, the Court declines to reconsider its denial of a certificate of appealability.

## IV. CONCLUSION

For the aforementioned reasons, the Court will deny the instant Rule 59(e) Motion. (D.I. 97) The Court also declines to issue a certificate of appealability, because Petitioner has failed to make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see United States v. Eyer*, 113 F.3d 470 (3d Cir. 1997); 3d Cir. LAR 22.2 (2011).